IN THE UNITED STATES DISTICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

BRADLEY PATTON, *on behalf of himself
and others similarly situated,*

    Plaintiff

v.

MIKE FITZHUGH,
    *in his official capacity as Sheriff of
    Rutherford County, Tennessee*

MELISSA HARRELL,
    *in her official capacity as Clerk of the
    Rutherford County Circuit and
    General Sessions Courts*

JAMES TURNER,
    *in his official capacity as Circuit Judge
    for the Sixteenth Judicial District*

BARRY TIDWELL,
    *in his official capacity as Circuit Judge
    for the Sixteenth Judicial District,* and

HOWARD WILSON,
    *in his official capacity as Circuit Judge
    for the Sixteenth Judicial District*

---

## CLASS ACTION COMPLAINT
---

    Plaintiff Bradley Patton, on his own behalf and on behalf of the proposed class, brings suit against the Defendants as follows:

1

## INTRODUCTION

1) This civil rights lawsuit is about the unconstitutionality of Rutherford County's widespread requirement of bail source hearings, where the criminally accused are held effectively without bail, typically for some rather lengthy period, until they can prove and document that their bail money has no connection to drugs.

## THE PARTIES

2) The Plaintiff, BRADLEY PATTON, is a citizen of Tennessee presently accused in the Rutherford County Circuit Court of several drug-related crimes, currently incarcerated and unable to make bail without first proving the legitimacy of his bail source.

3) Defendant MIKE FITZHUGH is the Sheriff of Rutherford County, sued in his official capacity. He oversees the Rutherford County Jail. He is responsible for taking bail from those persons who are criminally accused that wish to gain pretrial release. Currently he is holding Plaintiff PATTON, refusing to release him until his bail source has been verified by a judge as unconnected to criminal proceeds.

4) Defendants JAMES TURNER, BARRY TIDWELL, and HOWARD WILSON are circuit judges of the Sixteenth Judicial District (which includes

Rutherford County) who oversee criminal cases. They are sued in their official capacity. They have implemented the bail source policy, as embodied in the district's Local Rules, quoted further below.[1]

5) Defendant MELISSA HARRELL is the Circuit Court Clerk, sued in her official capacity. She serves as the Clerk of the Rutherford County Circuit Court as well as the Rutherford County General Sessions Court. Along with the Sheriff, she is responsible for accepting bail from those persons who are criminally charged.

## FACTUAL BACKGROUND

6) On December 18, 2021, Plaintiff BRADLEY PATTON was arrested in Rutherford County and charged with the following state crimes:

    a) Possession of Schedule II drugs with intent to sell,

    b) Possession of Schedule IV drugs with intent to sell,

    c) Possession of a firearm with intent to go armed during a dangerous felony,

    d) Simple possession,

    e) Simple possession of methamphetamine, and

    f) Possession of drug paraphernalia

7) Initially, PATTON bonded out on bail of $21,000.

---

[1] Judge Wilson also goes by the title "Chancellor" and apparently has that role as well, but he commonly executes the criminal duties of a circuit judge.

8) Later, after he missed a court date by mistake (and then turned himself in to address the matter), his total bail was raised to $26,000. But he again made bail, still in the Rutherford County General Sessions Court.

9) Once his case was bound over to the Rutherford County Circuit Court, though, the State of Tennessee and/or grand jury added a charge of Driving Under the Influence. It also upgraded the Simple Possession of Methamphetamine charge, changing it to Possession of Schedule II Drugs, Methamphetamine, over Half a Gram, with Intent to Resell.

10) As a result of having the charge(s) added, Defendant JUDGE JAMES TURNER roughly quadrupled PATTON's bond, sua sponte and ex parte. Namely, he added an additional bail requirement of $75,000.

11) Due to a subsequent motion by the State to revoke or increase bail (based on PATTON's failure to immediately turn himself in at the jail, after being notified about the bail increase), JUDGE BARRY TIDWELL later added an additional bail requirement of $25,000. This act thereby brought the total bail required for the case up to $126,000.

## REQUIREMENT OF BAIL SOURCE HEARINGS

12) The Defendants in Rutherford County employ a policy of refusing to release criminally accused persons on bail if the amount of required bail meets or exceeds $75,000, until the accused first appears in court, proving, with thorough

documentation, that his bail assets are not derived from crime. This requirement is called a requirement for a bail "source hearing."

13) Although the official policy, shown below, claims that the hearing shall be set on an "expedited basis" within three days of attempting to post bail, customarily the accused is forced to wait substantially longer. Even if bail is made, or offered to be made, typically the accused is still held for a week or more.

14) In the case of Plaintiff PATTON, for example, he filed appropriate real estate bail bond paperwork on June 13, 2023, totaling the $100,000 bail that remained unpaid. But he was still forced to wait until June 22, 2023 at the earliest (i.e., scheduled for later today, as this lawsuit is being filed early on the morning of June 22) to prove the legitimacy of his bail source.

15) The State of Tennessee and its local government entities have no legitimate interest at all in ensuring that bail is paid without using criminal proceeds.

16) Nor is the bail source policy employed by the Rutherford County Defendants narrowly tailored to meet any legitimate interest, important or otherwise.

17) Instead, the entire purpose behind Rutherford County's policy is simply to harass those accused of crimes, and to prevent, delay, or otherwise make it difficult, tedious, and expensive for them to gain pretrial release.

18)     In any event, it appears undisputed that the bail source hearing requirement has nothing to do with the normal, appropriate purposes of bail: Assuring the presence of the accused, and keeping the community safe while the accused awaits trial.

19)     After all, these legitimate purposes of bail remain fully served even if the bail money was acquired by selling drugs. Regardless of whether the bail money was earned legally, the person paying the bail money still has an incentive either to attend court, or else to insure that the accused attends court. The source of the money simply does not matter.

20)     Instead of fulfilling the purpose of assuring the presence of the accused at trial, the Tennessee General Assembly announced the following purposes for the bail source hearing requirement:

> (a)     "The General Assembly finds and declares that an effective means of *deterring criminal acts* committed for financial gain is through the forfeiture of profits and proceeds acquired and accumulated as a result of such criminal activities.
>
> (b)     It is the intent of the General [A]ssembly to provide the necessary tools to law enforcement agencies and district attorneys general to *punish and deter* the criminal activities of professional criminal and organized crime through the unitary enforcement of effective forfeiture and penal laws. It is the intent of the General Assembly, consistent with due process of law, that all property acquired and accumulated as a result of criminal offenses be forfeited to the State of Tennessee and that the proceeds be used to fund further law enforcement efforts in this State.
>
> (c)     It is further the intent of the General Assembly to protect bona fide interest holders and innocent owners of property under this

6

> Chapter. It is the intent of the General Assembly to provide for the forfeiture of illegal profits without unduly interfering with commercially protected interests.

Tenn. Pub. Acts 1998, Ch. 979, § 1 (emphases added).

21) The source hearing statute, passed at the same time as the above declarations, provides as follows:

> Any criminal court or general sessions court may conduct such hearings and enter such orders, injunctions, restraining orders, prohibitions, or issue any extraordinary process for the purpose of ensuring that any defendant does not use any proceeds directly or indirectly derived from a criminal offense for the purpose of securing an appearance bond or to pay the premium for the bond. Any court may require the defendant or bonding agent to prove in open court the source of such bond or premium before accepting the bond, and the burden of proof shall be upon the party seeking the approval or acceptance of the bond.

Tenn. Code Ann. § 39-11-715.

22) As shown above, state law does not actually require the source hearings under any circumstances. But it does give individual courts the authority to require them.

23) As stated above, the purpose of the bail source hearing is not to ensure the presence of the accused, but to "punish" him without trial and thereby "deter" criminal acts. *See id.*

24) Even if the government had any valid purpose for restricting bail money that resulted from drug crime, it would still violate due process for the government to shift the burden of proof to the private citizen to prove that his bail money is innocent.

7

25) The core of due process requires notice and an opportunity to be heard. But for a bail source, the money is presumed to have a status of "guilty," as subject to forfeiture for being drug proceeds, until proven otherwise by the citizen.

26) As a result of the Defendants' policies, the judicial system in Rutherford County requires that any criminally accused person whose bail is set at $75,000 or more carry out a source hearing, if the accused is charged with any of a broad assortment of crimes. The policy is found in the 2021 Local Rules for the 16th Judicial District Chancery and Circuit Courts. It reads as follows:

> (G) Any single or total bond for the same defendant, charged with an offense listed in Rule 16.07(H) or (I), in an amount of Seventy-Five Thousand Dollars ($75,000.00) or more shall not be made without an order approving the source. Any hearing upon motion by defendant or bonding company shall be heard on an expedited basis requiring three (3) days' notice to the Court and the District Attorney General. The Court shall conduct a hearing to determine compliance with these Rules and the provisions of Tennessee Code Annotated (T.C.A.) § 39-ll-715 regarding the source of the premium of said bond. Any Trial Court or General Sessions Court, depending upon where the case is pending, may conduct such hearings and enter such orders, injunctions, restraining orders, prohibitions, or issue any extraordinary process for the purpose of ensuring that any defendant does not use any proceeds directly or indirectly derived from a criminal offense for the purpose of securing an appearance bond or to pay the premium for the bond. Any court may require the defendant or bonding agent to prove in open court the source of such bond or premium before accepting the bond, and the burden of proof shall be upon the party seeking the approval or acceptance of the bond. If the Trial Court in which the case is pending is unavailable, the source hearing may be conducted in any Trial Court exercising criminal jurisdiction. Nothing in this rule shall prohibit the District Attorney General from filing a motion to request a source in any

8

Case 3:23-cv-00637   Document 1   Filed 06/22/23   Page 8 of 17 PageID #: 8

case. Further, nothing in this rule shall prohibit the Court, sua sponte, requiring a source on its own motion.

(H) Criminal Offenses subject to a source hearing as required by Rule 16.07(G):

> First Degree Murder; 39-13-202
> Second Degree Murder; 39-13-210
> Voluntary Manslaughter; 39-13-2ll
> Robbery: 39-13-401
> Aggravated Robbery: 39-13-402
> Especially Aggravated Robbery: 39-13-403
> Carjacking: 39-13-404
> Criminal Simulation: 39-14-ll5
> Forgery: 39-14-ll4
> Tax Fraud/Evasion: 67-2-121
> Felony Theft: 39-14-103-105; 39-14-108; 39-14-ll0
> Identity Theft: 39-14-150
> Embezzlement: See Theft and 40-13-221
> Credit Card Fraud: 39-14-118
> Bribery: 39-16-101-108
> Counterfeit Money: See Forgery and 40-13-215
> Money Laundering: 39-14-901-909
> Financial Exploitation of an Elder/Vulnerable Person: 39-15-502
> Extortion: 39-14-112
> Organized Retail Crime: 39-14-113
> Trafficking for Forced Labor or Services: 39-13-308
> Trafficking for Commercial Sex Act: 39-13-309
> Aggravated Gambling Promotion: 39-17-504
> Worthless Checks: 39-14-121
> Human Trafficking: 39-13-314
> Promoting Prostitution: 39-13-515
> Aggravated Prostitution: 39-13-516
> Promoting Travel for Prostitution: 39-13-533
> Fraudulent Qualifying for Set Aside Programs 39-14-137
> Theft of Trade Secrets: 39-14-138
> Sale of Recorded Live Performances without Consent: 39-14-139
> Communication Theft: 39-14-149
> Use of Counterfeit Mark/Logo: 39-14-152
> Home Improvement Fraud: 39-14-154

9

Illegal Sale of Firearms: 39-17-1301-1304; 1316
Insurance Fraud: 56-53-102
False or fraudulent insurance claims: 39-14-133

(I) Felony Controlled Substance Offenses subject to a source hearing as required by Rule 16.07(G):

39-17-417(a) Manufacture, delivery, sale or possession of Controlled Substances
39-17-417(b) Schedule I
39-17-417(c) Schedule II
39-17-417(d) Schedule III
39-17-417( e )(I) Schedule IV - Flunitrazepam
39-17-417( e)(2) Schedule IV
39-17-417(£) Schedule V
39-17-417(g) Schedule VI
39-17-417(h) Schedule VII
39-17-417(i) M/D/S/P Controlled Substances constituting a Class B Felony
39-17-423 Counterfeit controlled substances
39-17-425(b)(1) Unlawful drug paraphernalia as a Class E Felony
39-17-433 Promotion of methamphetamine manufacture
39-17-434 Manufacture, delivery, sale or possession of methamphetamine
39-17-435 Initiation of a process intended to result in the manufacture of methamphetamine.
39-17-438 Production, manufacture, distribution, or possession of salvia divinorum or synthetic cannabinoids
39-17-453(a) Imitation controlled substances
39-17-454(c) Controlled substance analogues
39-17-455(b) Manufacture of marijuana concentrate by process which includes use of inherently hazardous substance - Use of premises.
53-11-401(a)(l)/(2) Unlawful distribution of controlled substances
53-11-40l(a)(5) Maintaining a dwelling

27) Pursuant to this policy, and for the specific purpose of punishing PATTON without trial, the court added a bail requirement of $75,000 sue sponte

10

and ex parte, payable at arraignment, even though PATTON was already attending court, simply because one of his misdemeanor charges was modified to a felony (whereas he was already facing drug felonies on other counts) and because a misdemeanor DUI charge was added (later dismissed as violating the statute of limitations).

28) It is common practice for the Rutherford County Circuit Court to increase criminal defendants' bail ex parte, any time a charge is added or upgraded at indictment, regardless of whether the accused was already attending court.

29) It is also common practice for the Rutherford County Circuit Court to set bonds in the specific amount of $75,000 for drug cases, specifically in order to trigger this source hearing requirement.

30) The judges named herein, sued in their official capacity, have directly instituted and implemented the bail source hearing policies that have harmed Plaintiff PATTON.

31) Likewise, Sheriff MIKE FITZHUGH and Court Clerk MELISSA HARRELL (also sued in their official capacities) have followed said policy. They have refused to accept bail and release criminal defendants until the bail sources in question are approved by one of the judges.

32) For each cause of action listed below, the term "Plaintiffs" refers to the named Plaintiff, as well as individuals comprising the proposed class of individuals similarly situated (more fully described in a later section).

# CLAIMS PRESENTED

## COUNT I

### VIOLATION OF SUBSTANTIVE DUE PROCESS
### UNDER COLOR OF LAW

### 42 U.S.C. § 1983

33) The paragraphs in the other sections are incorporated by reference.

34) As the Supreme Court has freely conceded, there is a "general rule" of substantive due process that protects the criminally accused from unnecessary pretrial incarceration. *United States v. Salerno*, 481 U.S. 739, 749 (1987). Indeed, freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects. See, e.g., Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."). Pretrial detention infringes upon this right. As such, it may only be required if it is narrowly focused to serve compelling government interests.

35) By restricting pretrial release for no purpose at all, except to punish and deter criminals and to force citizens to prove the innocent status of their assets, the Defendants have deprived the Plaintiffs of liberty without substantive due process, and they have done so under color of law.

## COUNT II

## VIOLATION OF PROCEDURAL DUE PROCESS
## UNDER COLOR OF LAW

## 42 U.S.C. § 1983

36) The paragraphs in the other sections are incorporated by reference.

37) Procedurally, orders of pretrial detention may be entered only after rigorous procedures are met. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319 (1976). Said procedures include, but are not limited to: a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial incarceration is necessary because no alternative conditions or combination of conditions would reasonably ensure the individual's future court appearance and the safety of the community. Procedural due process requires procedures sufficient to protect Plaintiffs' substantive rights to pretrial liberty and against wealth-based detention.

38) By requiring the ongoing detention of the Plaintiffs without any hearing, automatically, simply for having bail set over $75,000 (bail which is often set at that level specifically to trigger a source hearing requirement), and also by shifting the burden of proof to the Plaintiff to prove the innocence of his money

13

(instead of requiring the government to prove its guilt), the Defendants have deprived the Plaintiff of liberty without procedural due process. They have violated the Fourteenth Amendment. They have carried out this violation under color of law.

## CLASS ACTION ALLEGATIONS

39) To be clear, Plaintiff PATTON brings these claims not only on his own behalf. Instead, if the Court approves of the class certification pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(2), then he also would bring claims on behalf of the following Class:

> All people who are, or will be, arrested and charged with criminal offenses in Rutherford County and detained in jail as a result of the Defendants' bail source hearing requirements.

40) Under Federal Rule of Civil Procedure 23(a), certification of a class is appropriate where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

41) Here the precise size of the class is unknown, especially because it is forward-looking. But it is substantial, given that numerous (likely hundreds of) applicable arrests are made each year.

42) BRADLEY PATTON, is a member of the Class.

14

43) The Class is so numerous that joinder of all members is impracticable. The proposed Class consists of easily more than one hundred persons.

44) There are questions of law and fact common to the Class that predominate over any questions only affecting individual members. Such questions include the following:

  (i) Whether the bond source hearing requirement of Rutherford County violates the Fourteenth Amendment right to substantive due process;

  (ii) Whether the bond source hearing requirement of Rutherford County violates the Fourteenth Amendment right to procedural due process;

45) The claims of PATTON are typical of the Class, and arise out of similar facts.

46) PATTON and his counsel will adequately represent the interests of the Class.

47) Neither PATTON nor his counsel has any interest that would preclude either individual from vigorously pursuing the action.

48) The proposed class counsel has practiced law for over twelve years, and he possesses relatively broad experience in litigating federal civil rights claims, as well as in criminal law.

49) The likelihood that other individual members of the Class will prosecute separate actions is remote, given that the class members will generally be

15

Case 3:23-cv-00637   Document 1   Filed 06/22/23   Page 15 of 17 PageID #: 15

incarcerated and thereby impoverished. Moreover, the injustices described herein have been going on for a number of years and no one has yet challenged them.

## JURISDICTION

50) This federal Court has subject-matter jurisdiction under 28 U.S.C. 1331 because the Complaint alleges a federal question, namely the alleged violation of the federal civil rights statute.

51) This Court in Tennessee has personal jurisdiction because all of the Defendants are citizens of Tennessee.

52) Venue is proper in the Middle District of Tennessee (Nashville Division) because all of the alleged acts happened in Rutherford County, Tennessee.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Bradley Patton, on his own behalf and on behalf of others in the proposed class, prays for the following:

i) Certification of a class under Fed. R. Civ. P. 23(a) and (b)(2), represented by the named Plaintiff Bradley Patton;

ii) A declaration that the Defendants have violated Patton's and class members' rights under the Fourteenth Amendment, as alleged herein;

iii) A temporary restraining order requiring the Sheriff (and other named Defendants) to release Plaintiff Patton and all other members of the class upon the payment of their bail, without any additional requirement of proving the innocence of the bail assets in a source hearing;

iv) A preliminary and permanent injunction requiring the same;

16

v) Reasonable attorney's fees;

vi) Any other reasonable relief as the Court may find appropriate, such as the taxation of costs to the Defendants.

>Respectfully submitted,
>
>/s/ Drew Justice
>Drew Justice #29247
>Attorney for Bradley Patton
>1902 Cypress Drive
>Murfreesboro, TN 37130
>(615) 419-4994
>drew@justicelawoffice.com